**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| In re:<br><br>JACQUELYN A. BULLIS and<br>THOMAS J. BULLIS,<br><br>     Debtors. | Case No.  13-11471-RGM<br>(Chapter 7) |
| PHILIP T. PARKER,<br><br>     Plaintiff,<br><br>vs.<br><br>THOMAS A. BULLIS and<br>JACQUELYN A. BULLIS,<br><br>     Defendants | Adv. Proc. No. 13-1185 |

**MEMORANDUM OPINION**

This case is before the court on the joint motion of the debtors and a creditor to approve a settlement of a complaint objecting to the granting of a discharge to the debtors. The parties propose that the discharge complaint be dismissed, the debtors receive their discharge and the creditor's judgment be declared nondischargeable. The last relief was not requested in the complaint. The motion will be denied. *The Mandell Law Firm v. Pizzini (In re Pizzini),* 2003 Bankr.LEXIS 1164 (Bankr.E.D.Va., March 7, 2003).

The complaint seeks to deny the debtors their discharges. It raises serious questions about the accuracy of the debtors' schedules and statement of financial affairs; the absence of financial records; and their inability to explain the loss of the assets. 11 U.S.C. §§727(a)(3), (a)(4)(A) and

1

(a)(5). It sets out the creditor's claims against the debtors. The first claim is a judgment entered against Emory Construction, Inc., and Tom Bullis, one of the joint debtors, on November 3, 2003, for $25,000.00 plus interest at the rate of 24% per annum and attorney's fees of $5,387.00 plus interest at the rate of 9% per annum. The second claim is a confessed judgment entered on November 1, 2012, against both debtors in the amount of $39,535.08 plus interest at the rate of 6% per annum and attorney's fees of $15,000.00. There are no allegations that the creditor's claims are nondischargeable.[1]

The joint motion provides no information about the settlement. It notes no one else filed an adversary proceeding against the debtors and that the time within which one may be filed has expired. It summarily concludes that the parties "believe [the settlement] to be in the parties' interest." The settlement is contained in the proposed order. It provides that the creditor's two claims are nondischargeable pursuant to §523(a)(2), that there will be no enforcement of the judgments for six months and that the debtors will provide written notice of any relocation of their principal residence or domicile. The notice to creditors contains no information about the settlement other than the proposed order which is attached to the notice.

Most civil litigation may be settled by the parties without court approval. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968); Fed.R.Civ.P. 41(a). However, the parties' ability to settle

---

[1] Philip Parker, the creditor in this case, may have a claim for nondischargeability of his first claim, the November 3, 2003, judgment. Mr. Bullis, one of the joint debtors in this case, filed a chapter 7 petition in bankruptcy in this court on March 22, 2004. *In re Thomas Joseph Bullis,* Case No. 04-11243-RGM. He scheduled Dominion Building & Design c/o Philip Parker as a creditor in that case with a disputed claim of $40,000.00. Mr. Bullis was denied a discharge in that case. Order, *Chapman v. Bullis (In re Bullis),* Adv.Proc. No. 04-1250-RGM (Bankr.E.D.Va., Sept. 21, 2005) (Docket Entry 52). Assuming that the November 3, 2003 judgement is not satisfied, it is not dischargeable in a subsequent bankruptcy case. 11 U.S.C. §727(a)(10).

complaints objecting to a debtor's discharge is limited by Fed.R.Bankr.P. 7041 which incorporates Rule 41 with certain modifications. Rule 7041 states:

> Rule 41 F.R.Civ.P. applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

The restriction recognizes that a discharge is "the heart of the fresh start provisions of the bankruptcy law." Sen. Rep. No. 95-989, 95th Cong., 2nd Sess. (1978), at 99. "Dismissal of a complaint objecting to a discharge raises special concerns because the plaintiff may have been induced to dismiss by an advantage given or promised by the debtor." Advisory Committee Note to Rule 7041. A discharge objection can also be misused to gain leverage in a dischargeability objection. Rule 7041 requires court approval for these reasons. It also requires that notice of dismissal be given because the United States Trustee or others may have refrained from timely filing their own complaint objecting to discharge, relying on the complaint filed. Notice permits them to intervene and prosecute the complaint.

There are three basic approaches to reviewing proposed settlements of §727 complaints. *In re de Armond,* 240 B.R. 51, 55 (Bankr.C.D.Cal. 1999). The first approach is the per se rule. It holds that no settlement of a §727 objection is permissible. *See In re Delco,* 327 B.R. 491 (Bankr.N.D.Ga. 2005); *In re Levine,* 287 B.R. 683, 692-93 (Bankr.E.D.Mich. 2002); *In re Vickers,* 176 B.R. 287, 290 (Bankr.N.D.Ga. 1994) ("Discharges are not property of the estate and are not for sale."); *In re Moore,* 50 B.R. 661, 664 (Bankr.E.D.Tenn. 1985)("[A] discharge in bankruptcy is not an appropriate element of a quid pro quo."). The essential proposition is that as a matter of public policy the debtor is either entitled to a discharge or is not. There is no middle ground. If he is

entitled to a discharge, he ought not be required to pay additional amounts to either a creditor or the estate for his entitlement.  Payment for a discharge is inimical to his fresh start.  If, on the other hand, he is not entitled to a discharge, he should not be permitted to purchase a discharge.  This approach is appealing from a public policy perspective, however, it is difficult to reconcile with the absence of an express prohibition of settlement of §727 complaints in the Bankruptcy Code and the language of Rule 7041 which specifically permits dismissal of §727 complaints upon such "terms and conditions which the court deems proper." Fed.R.Bankr.P. 7041. It also does not account for the fact that the parties' perceptions of the likelihood of success often change during the course of litigation.  Litigants make informed decisions based on the facts and law as they understand them, but those understandings change as new information becomes available through discovery.  While there may well be smoke, the plaintiff may become unsure whether he will be able to prove if there is a fire and, if so, who set it.  The debtor may also harbor uncertainties.  Such circumstances are conducive for a settlement.  The per se prohibition of settlement forces both parties to either expend the maximum financial resources to obtain a resolution of the matter or capitulate.  Discharge litigation does not generate funds from which a chapter 7 trustee may be paid for his services.  Similarly, debtors are apt to be impecunious and unable to afford the very legal services needed to vindicate their right to a discharge.  These transactional costs can themselves deflect the course of the litigation away from the desired result of a final determination on the merits. Forcing the parties to fully and completely litigate §727 complaints in which they no longer have full confidence may lead to desultory prosecutions or unnecessary capitulations.

The second approach is the "trustee" approach.  It recognizes the tension between the "vindication of the public interest in upholding the policies behind §727, and the public interest in

4

fostering the peaceful, just, speedy and inexpensive resolution of disputes." *In re Margolin,* 135 B.R. 671, 673 (Bankr.D.Colo. 1992). Since the §727 complaint is for the benefit of all creditors, the plaintiff is, essentially, trustee for the benefit of all the creditors. The plaintiff-trustee may discharge his fiduciary duties and resolve the tension between the public interests in the policies behind §727 and in the consensual resolution of disputes and the additional tensions arising from the private interests arising under §523 by giving notice of the settlement, making full disclosure of the terms of the proposed settlement and affording all creditors, the chapter 7 trustee and the United States Trustee the opportunity to become the plaintiff and conclude the litigation. If there is no objection or motion to substitute and the terms are appropriate, the settlement will generally be approved. *In re Margolin* 135 B.R. at 673*; Hage v. Joseph (In re Joseph),* 121 B.R. 679 (Bankr.N.D.N.Y. 1990).

The third approach has been characterized as the "cautious but pragmatic" approach. It is similar to the trustee approach, but the terms of settlement are carefully reviewed to assure that they are in the best interests of the estate and that the settlement is not tainted.[2] *See Cadlerock Joint Venture II, LP v. Salinardi (In re Salinardi),* 307 B.R. 353 (Bankr.D.Conn. 2004); *In re Traxler,* 277 B.R. 699, 705 (Bankr.E.D.Tex. 2002); *Hass v. Hass (In re Hass),* 273 B.R. 45 (Bankr.S.D.N.Y. 2002); *Tindall v. Mavrode (In re Mavrode),* 205 B.R. 716, 719-20 (Bankr.D.N.J. 1997); *In re Bates,* 211 B.R. 338, 348 (Bankr.D.Minn. 1997); *Russo v. Nicolosi (In re Nicolosi),* 86 B.R. 882 (Bankr.W.D.La. 1988). The best interests of the estate are met by considering the same factors a

---

[2] It is not clear that there is a difference between the trustee approach and the cautious but pragmatic approach. In Margolin the settlement was fully disclosed. The motion explained why the plaintiff had come to the conclusion that the discharge objection would be lost. After notice, no one came forward to pursue it. The opinion did not discuss the merits of the proposal or the underlying case but did not need to because they were not in dispute and fully supported the plaintiff's motion. *Hage v. Joseph* did not need to discuss the merits of the settlement because it allowed the substitution of a new plaintiff. The trustee approach may merely set out the procedure for settling §727 complaints while the cautious but pragmatic approach sets out the substantive standard for court approval.

court considers in reviewing any proposed settlement: (1) the probability of success on the merits in the litigation; (2) possible difficulties of collecting any judgment which might be obtained; (3) the complexity, expense, and likely duration of any ensuing litigation; and (4) the interests of the creditors, giving proper deference to their reasonable views. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. at 424-25, 88 S.Ct. at 1163-64; *Shaia v. Three Rivers Wood, Inc. (In re Three Rivers Woods, Inc.),* 2001 Bankr.LEXIS 737, 2001 WL 720620 (Bankr.E.D.Va. 2001); *In re Austin,* 186 B.R. 397, 400 (Bankr.E.D.Va. 1995). A taint occurs when the benefits of the settlement do not accrue to all creditors, where there is concern that the §727 complaint is not well founded and the settlement is tantamount to "extorting" money from the debtor for a discharge to which he is entitled, or where the §727 complaint is so well founded that the settlement is tantamount to the debtor "buying" a discharge to which he is not entitled. *In re Lanier,* 383 B.R. 302, 307 (Bankr.E.D.N.C. 2008) ("Where a debtor engages in activity that supports a denial of discharge, the integrity of the bankruptcy system and the confidence of the public in our bankruptcy courts, will suffer irreparable harm, by allowing a dishonest debtor to purchase his discharge."); *In re Hass,* 273 B.R. at 52-53; *In re de Armond,* 240 B.R. at 60.

All three tests endeavor to distinguish between appropriate and inappropriate settlements. The cautious but pragmatic approach is best suited to allow a careful consideration of the multitude of factors that may occur, particularly where a §727 complaint is joined with a §523 complaint brought by a creditor. It is particularly sensitive to a determination of whether the consideration for the settlement of the §727 count will go to the estate rather than an individual creditor even though the consideration may be attributed by the parties to the §523 count. It is also best supported by the text of Rule 7041 which anticipates settlement of §727 complaints after court review.

The complaint in this case alleged that the debtor was not entitled to its discharge under §727. There is no allegation under §523. No reason is given supporting the proposed settlement other than the conclusion of the parties that it is in their best interest. It is in their best interests. The creditor leaves with two enforceable debts. The debtors leave with a discharge. The rest of the creditors leave with nothing. Discharge complaints benefit all of the creditors – not a few select creditors. *See Cadlerock Joint Venture II, LP v. Salinardi (In re Salinardi)* 307 B.R. 353 (Bankr. D.Conn. 2004)*; Mandell Law Firm v. Pizzini (In re Pizzini)* 2003 Bankr. LEXIS 1164 (Bankr. E.D.Va. 2003): . A settlement needs an adequate basis. It may be that a settlement is appropriate if the complaint is at real risk of being unsuccessful and the settlement of the uncertainty provides funds to the estate for distribution to creditors. That is not the situation in this instance. Without an adequate basis to approve the settlement and with consideration going to one creditor and not the creditor body, the settlement in inappropriate.

In addition to the merits of the proposed settlement, the notice of the proposed settlement was inadequate. Because of the interest of the entire creditor body, a settlement of a §727 complaint must provide a sufficient basis for creditors to evaluate the proposed settlement. It must set out the nature of the claims and the defenses. It must explain why the complainant believes that the settlement is in the best interest of the creditor body. It should discuss, for example, the weaknesses of the case against the debtor. It must describe any consideration and why that consideration is appropriate. The notice must also advise all creditors and parties in interest that they may intervene in the suit and substitute themselves for the plaintiff if they decide that they wish to prosecute the matter.

The United States Trustee objected to the settlement and seeks to substitute herself as the

7

plaintiff. Mr. Parker, the creditor, objects. He notes that the United States Trustee sought and obtained an extension to October 8, 2013, within which to file a complaint objecting to granting the debtors a discharge but did not file a complaint. He relies on *City of Chicago v. Wexler (In re Wexler),* 477 B.R. 709; 2012 Bankr.LEXIS 3668 (Bankr.N.D.Ill. 2012). In *Wexler,* the debtor filed his petition in the Bankruptcy Court for the Southern District of Florida. The case was transferred to the Bankruptcy Court for the Northern District of Illinois and a successor chapter 7 trustee was appointed. The City of Chicago timely filed a complaint objecting to the debtor's discharge. More than a year after the bar date for filing such complaints expired, the chapter 7 trustee sought to intervene and be added as a plaintiff. The City of Chicago consented to the motion but the debtor objected. The bankruptcy court denied the motion, holding that the trustee waited to long to seek to intervene. The case does not support Mr. Parker's opposition. In *Wexler,* the trustee sought to be ***added*** as a plaintiff. The bankruptcy court distinguished this from the situation where the trustee seeks to ***replace*** the plaintiff. It stated:

> The trustee confuses intervention with substitution. As one bankruptcy court recently observed in addressing the same argument: "Whether a party can be procedurally added as a plaintiff is unrelated to whether a [party] can be equitably substituted for an original plaintiff. Furthermore, because the purpose of substitution is to ensure adjudication of a claim when the original plaintiff abandons its claim, it does not serve as a basis to add a plaintiff." [*Klaas v. Donovan (In re Donovan),* 411 B.R. 756, 767 (Bankr.S.D.Fla. 2009).]
>
> The trustee is right, of course, that a new plaintiff can be substituted when an adversary proceeding involving an objection to discharge is dismissed. See L.R. 7041-1(A), (B); *Cantwell & Cantwell v. Vicario,* 464 B.R. 776, 784-85 (N.D. Ill. 2011). But that does not make it appropriate to add a plaintiff before the original plaintiff has left the scene. *See In re McKissack,* 320 B.R. 703, 724 (Bankr. D. Colo. 2005) ("So long as the original plaintiff remains in the case to pursue its complaint, a motion for intervention . . . is premature."). To the contrary, the City's presence as a plaintiff, coupled with the trustee's ability to substitute as plaintiff if the City withdraws, means that denial of intervention poses no risk to the trustee. *See Donovan,* 411 B.R. at 766 (noting that the prejudice a proposed intervenor faced was

> "slight" because the intervenor would "reap the same benefits" if the plaintiff succeeded but could substitute if the plaintiff withdrew).

*In re Wexler*, 477 B.R. at 713.  That is exactly the situation in this case.  The creditor seeks to leave the scene and the United States Trustee seeks to replace him.  It is not a question of the timeliness of the United States Trustee commencing the action.  It is a question of finishing what the creditor started.  Permitting the United States Trustee to substitute as the plaintiff protects the integrity of the court and prevents collusion between the creditor and the debtors to the detriment of the bankruptcy estate.

The joint settlement motion will be denied and the United States Trustee's motion to substitute herself as the plaintiff in the place and stead of the creditor will be granted.

Alexandria, Virginia
January 23, 2014

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Gregory H. Counts
Robert J. Cunningham, Jr.
Bradley D. Jones

18958